Mr. Harrison. Are you ready? Yes. May it please the court, James Harrison for the plaintiff's We're here based on the dismissal of all of our claims in the business matter involving the ownership of Smithfield Chicken and Barbecue franchises. The district court erred in dismissing everything that was before the court. Before this court, there are only four claims left. Tortious interference, breach of contract, breach of the covenant of good faith with Fair Dillon, and unfair and deceptive trade practices. And so as an initial matter, we would vehemently argue that that 249-paragraph complaint was sufficient to withstand a 12B6 motion. All reasonable inferences should have been in favor of the plaintiff. All facts played should be considered to be true. So we're suspecting, I'll take them in order, breach of contract case. There's a series of transactions that occur between parties where the defendants argue that the end of court releases affected the ability for us to go forward on breach of contract claims. There were four separate releases and there are four separate franchises. So two of those releases, we agreed with the court that it would be appropriate that those claims would be consumed within the releases. And so in the releases contained in the Foto-Leland and Chalup franchises, we conceded those. Those were agreements between the parties whereby the restaurants would be relinquished to the franchisor, the defendants, and then after a period of time, options to purchase and the continuing lease agreements would go forward. We conceded those points. However, this is sort of kind of convoluted, but the properties owned by Flamingo, properties which would be Market Street properties and the Patriot Way properties, the first two that my client and his partner purchased and set up those franchises, those two restaurants and franchises in an agreement with the defendants to amend the franchise agreement. We contend that the amendment to the franchise agreement contains releases also. However, nothing in those releases affect what occurred and what we pled after February 27, 2015. And that's why we're here today. Well, tell me how the court incorrectly applied defensive non-mutual collateral estoppel. Because in the lawsuit between my client and his business partner, and they applied non-mutual collateral estoppel to the issue of tortious interference with contract. And in the tortious interference case, nowhere in the litigation, in the state court, there were specifically enumerated 14 issues for trial. 14. Not one of them mentioned the word interfere, interference, conspiracy, conspire, any of that. The issues in the state court case between the partners evolved around a redemption agreement. That agreement is not at issue before this court. The resolution of that issue is not at issue before this court. And the conduct that is the predicate of our claims for tortious interference, the conduct of defendant Harris was not at issue in the court. So the application of non-mutual collateral estoppel by the district court was erroneous. All of the claims. So tell me why I shouldn't read the state court order. I mean, it seems to turn on the idea that the state court suggested, and that may be your disagreement, but suggested that Mark's claim, Mark, I don't know, claim of legitimate reason for terminating the contracts in May, that that was legitimate. I mean, now, it may not be the holding of the state court, but certainly the state court seems to suggest that. Why is that not the basis for the collateral estoppel? I get that it doesn't say interference. But if the state court had held, counterfactually, had held Mark's reason for terminating was real and legitimate, and we reject arguments to the contrary, that would be sufficient, wouldn't it? I would agree. So tell me why that's not here. That's not with the state court. I know. Tell me why. All of, let's say, assuming that the legitimacy wasn't challenged, was challenged in our case, we list exhaustive reasons why Mark's reliance, you know, when they sent the letter, had to have sent in May of 2015 by DLA Piper. All of the enumerated items that were supposedly wrong or incorrect with those franchises, we have alleged that every last one of them are false, and it is the basis of our breach of contract claim. So going back to tortious interference, the court didn't decide any of those issues. The redemption agreement was decided by that court. There was 14 issues relative to that redemption agreement, and that redemption agreement has absolutely nothing. Outside of maybe a mitigation of damages issue to do with the claims that we brought before this court, Mark and the defendants were not a party to that, and my clients would argue that we did, can't be collaboratively stopped unless we have an opportunity to litigate those issues, and those issues were not before the state court. Well, Judge Richardson makes a good point about the state court order, but I guess your argument would be that they just aren't necessary and essential to the judgment? My argument would be that... You ought to start with agreeing with him and then give another argument. No. What? They're not. Okay. Wait, so you do agree with Judge Floyd, right? That they aren't necessary? Yeah. Yes. Okay. To the state court judgment, because it was a redemption agreement that was at issue. The issues that we raised regarding tortious interference were never addressed by the court. Obviously, there were some facts that overlapped, but the case wasn't litigated. It wasn't litigated by Michael Musselwhite versus these defendants. It didn't happen, and so... Yeah, but that's just why it's non-mutual collateral. I understand that, but you have to have an opportunity, a fair opportunity to litigate those issues. So if you go back and you take a look at what was litigated between the party that was not present, it wasn't tortious interference. As I said before, there are 14 enumerated issues for trial. It's a whole record test. You have to look at the entire record to find out whether or not you had a fair opportunity to litigate. Fourteen issues, not one, regarding interference, conspiracy, you know, between the defendants and my client. Their involvement, I'm not going to sit here and say that they were not part of that trial, but the issues that were litigated, tortious interference was not. So if we don't get a chance to litigate tortious interference, they had every right. That state court order didn't foreclose our ability to pursue tortious interference. It actually bolstered it because of the findings. So on the issue of whether or not Harris induced my client's partner into breaching the contract they had for 20 some odd years. Also before the court, the issue of breach of contract, which we contend was well played. The breach of that contract was the May 2015 termination of the agreement. The termination was based on solely the information Harris had provided to DLA Piper in his letter terminating. And so since February 27th, the date of the entry of all of those, the date of the entry of all of those agreements, and going forward we have alleged numerous facts regarding breach of contract, the support of breach of contract. Now I noticed that the defendants in its response brief argued that we waived some claim on breach of contract and breach of covenant of good faith. And our response to that is that we responded to their motion to dismiss. All of those facts relevant to a breach of contract were before the court. We have an extensive amended complaint before the court and a plethora of those facts. Were used at the district court level. We have not waived anything, but conversely, and interestingly to us at that time, is that the defendants didn't argue that we had not sufficiently played. And that's still the standard. Did we plead it correctly? Did we pass a sufficiency test? It was a very well played complaint, detailed factually. And so those issues regarding the plausibility of the pleadings were never raised by the defendants. And so we cannot argue that they waived their right to argue regarding the breach of contract. There's also claims that were dismissed for unfair and deceptive trade practices. And our position is that the district court erred in dismissing those claims. We agree with the well settled law that a mere breach of contract, that a mere breach of contract, is not enough to sustain an unfair and deceptive trade practice case. However, in this case, it's not a mere breach of contract that was pleaded. There are extensive pleadings regarding the required requisite aggravating factors, such as Mr. Harris open carrying a gun. Mr. Harris using his height, weight, and size to intimidate franchisees, historically, and our client. Him physically kicking our client out of his own franchise. In essence, bullying this guy. He has a history of it. And that history was played in this complaint. Those are sufficient aggravating factors to take an unfair and deceptive trade practice case past a mere breach of contract. If all we were pleading was a mere breach of contract, it would take two pages, not 249 paragraphs, to explain what my client went through with respect to dealing with the defendants and his agent. And so we respectfully submit that the court erred in dismissing the unfair and deceptive trade practice case based on releases for conduct that occurred three months after the entry of those releases. All of that conduct has been sufficiently plead in detail. The claims for breach of the duty of good faith part and parcel of a breach of contract case, and likewise, we submit respectfully that those claims and the facts that support the breach of the covenant of good faith fair dealing were appropriately pledged. Now, turning the attention back to the tortious interference and the issue of non-mutual collateral to stop, the defendants argued that if the releases didn't terminate their claim or do await their claim, then they had a justifiable reason to interfere. And it appears that they have conceded that they have interfered. And so now the issue becomes whether or not they had a right to interfere. And the privilege to interfere is conditional. It is lost if exercised for a wrong purpose. We have pled extensively that all of the reasons that Harris relied upon in giving that information to DLA Piper and terminating the franchises were false in misrepresentations. I see where my time is about up. You've got some time in rebuttal. We'd be glad to hear from you. Thank you, Your Honor. Yes, sir. Mr. Edwards. Thank you, Judge Floyd. You may please the court. I've heard a lot of argument about the collateral estoppel piece, so I want to address that first. The district court got it right. It correctly applied non-mutual collateral estoppel. And I think the case that we submitted in our Rule 28J letter yesterday speaks to that point. To plausibly plead a tortious interference with contract claim, Mr. Musselwhite needed to plead that my client, MidAtlantic, induced a breach of contract between he and his business partner. Now, looking at the complaint, paragraphs 72 and 73 of the amended complaint reference a transfer. They indicate that Mr. Musselwhite transferred his interest in the Flamingo Properties entity to Mr. Cheshire, and he did so in exchange for $375,000. So I understand this argument, but to say the district court got this right suggests that the district court addressed this issue that you're raising now and that you raised this issue below. I don't see that. And I understand that's an alternative ground we can affirm on any reason, and maybe the district court on remand would say there was no breach here, hence no claim. But that doesn't seem like what the district court did or what you argued below. What it helped me point me to where, in your brief or in the district court's opinion, it finds that the absence of a breach, as found by the state court, precludes the tortious interference claim. Your Honor, so we did not raise collateral estoppel below. I'm in sort of an unusual position. The district court relied on a brief submitted by a co-defendant. It relied on a motion to dismiss. And in that context, while the motion to dismiss was pending, I believe Mr. Musselwhite settled with the co-defendant, and then the district court took arguments that the co-defendant made and applied in its order. So I am in an unusual position. And I'm not blaming you for it. I totally understand that. But the district court's order, reading the district court's order, it seems to base collateral estoppel on a different argument. Your argument might be a good one, but it just wasn't the one the district court relied on. Your Honor, I think maybe I'm getting ahead of myself in some respects because I don't think it's plausibly pled because there's no breach. If we're going to talk about collateral estoppel, the district court determined that the release was valid. Excuse me. The district court relied on the state court's determination that the release was valid. So in the state court proceeding, Mr. Musselwhite attacked the release between himself and Mr. Cheshire. He attacked it. He said it was fraudulent. He attacked it. He said it was procured by undue influence. And then at the end of the state court's order, the state court determines that the release was not procured by fraud, not procured by undue influence, and also that Mr. Musselwhite had ratified the agreement, that it is a valid agreement. And I think the district court's reliance on that finding, perhaps it is implicit, but there is no breach of contract. And I don't think, and again, this court can affirm for any basis on the record. So I don't think there is – I don't think he can plausibly allege any breach of contract occurred. So you think we should take the district court's opinion and because it references this ratification sort of infer from that that the only reason that could have been relevant was the lack of a breach. And though that wasn't discussed expressly, that must have been what the court said. I think that's a fair characterization of my argument. Maybe – I'm not trying to be flip about it. I'm just – I understand. But that's – I mean, and I'm not saying we can't do that, but that would be the sort of rationale we would give for those sets of claims. That's correct, Your Honor. And it's our contention that those are the only claims that are at issue. But more on the collateral estoppel point, I think the district court – excuse me. I think the state court also found that there was no interference or at least that my client was justified in interfering based on the conditions of the restaurant at the time. So this breach – Answer Judge Floyd's question on that. Why was that necessary to the state court's holding? Judge Floyd, if you look at paragraph 4 and paragraph 5 of the conclusions of law in the state court's order, I think the state court is saying there's no fraud. Cheshire did not defraud Mr. Musselwhite. And Mr. Musselwhite instead relied on representations made by Mr. Harris, who is – who was my client's agent at the time. I think by finding that Mr. Harris made those representations at that May 23rd meeting, it is fairly inferable that the May 23rd meeting occurred. Not only did the May 23rd meeting occur, but for that to be relevant, I believe the court had to determine that the conditions of the restaurant were as my client said they were, were as Mr. Harris said they were. Why – that was a step I didn't follow, right? So I get – he relied on the statements made on May 23rd. Harris said the restaurant was in bad condition. But why do I get the next step, which is Harris's statements that it was in bad condition were true? That last part is the part that seems to be missing. I think – well, Your Honor, Judge Richardson, the state court made numerous findings suggesting that it was true, determining that it was true. Suggesting it was true, I get. Determining it's true is where I'm having trouble. Your Honor, if you look at paragraphs – I believe it's finding of fact 28, finding of fact 32. They suggest that Mr. Musselwhite was spending less and less time at the restaurant, that Mr. Musselwhite had previously had problems, and that those problems had persisted. I think all of that is relevant to the district court's determination – excuse me, the state court's determination that Mr. Harris had this May 23rd meeting and that at the May 23rd meeting he confronted Mr. Musselwhite about the conditions of the restaurant. All that's true. The question is did he confront him truthfully or was he making up the conditions of the restaurant, right? I mean your colleague's allegations, right, suggest or at least claim, right, and we're just taking the claims that are made, is that Mr. Harris was making up those allegations in order to sort of drive a wedge between Mr. Cheshire and Mr. Musselwhite. But taking the state court's order as true and reading paragraphs 28, 29, 30, 31, 32, all of those paragraphs actually determine the restaurant was in a bad condition. I think all of – I think the truth of those statements is subsumed within conclusion of Law No. 5. In any event, I think that Mr. Musselwhite has failed to adequately plead a plausible claim because I don't think he has sufficiently rebutted the conclusion drawn in the DLA Piper letter that the conditions of the restaurant, the raw chicken, the improper food handling, that things like that are untrue. Instead, we have labels and conclusions. But why do we consider that letter at a motion to dismiss? The letter was incorporated into the complaint, Your Honor. I think paragraph 98 of the amended complaint explicitly references the letter. Now, how it gets in front of the court, I think the district court correctly considered the file that was put to it. Mr. Musselwhite didn't object to it before the district court. So we have the file. We have his express incorporation of the letter saying that the letter exists, acknowledging it exists, and acknowledging he received it. And I don't think there's been any dispute about the veracity, at least as to the fact of the letter. I don't think there's been any dispute about the veracity of the letter. Well, has your – this plausibility argument, was it raised below? Your Honor, the plausibility argument was raised below as to the tortious interference claim and the unfair and deceptive trade practices claim. Now, whether it was raised as to the breach of contract and the good faith claim, that goes to our waiver argument. So in the first instance, I think it is – my colleague characterizes what we've done – characterizes our motion to dismiss and the memorandum in support in the district court as making a catch-all argument. And I don't think that's true. Our first argument to the district court was Mr. Musselwhite has released the right to pursue these claims. And that makes sense if you look at the allegations. None of the allegations in Claim 2 or Claim 3, the breach of contract, or the breach of the duty and good faith and fair dealing claim, none of those allegations specifically reference this alleged breach of contract that occurred in May. Instead, they deal with what Mr. Musselwhite has framed as ongoing breaches throughout the life of the franchise or franchisee relationship. So I took sort of paragraphs 81 to 99 of the complaint to allege that that conduct during that time period, which was the May discussion, was part of the breach of contract claim. And when he responds or Mr. Musselwhite responds, that's what he points to. I mean he cites in response to his motion, page 9, he cites to that. And so why aren't those allegations in those paragraphs included as part of his breach of contract claim? Because if you're looking at the breach of contract claim, at the specific allegations listed under breach of contract, they're all about ongoing managerial violations. They're not about improperly terminating the relationship. So in our memorandum before the district court, we made the argument this is barred by the relationship. But they incorporate paragraphs 1 through 143 are realized and incorporated herein by reference to the breach of contract count. I understand that as a factual matter. But if you're looking at paragraphs 143 and the specific instances of breach of contract, the specific actions that constitute a breach of contract based on those paragraphs, there's nothing there. Well, but they're saying continuing because their allegation at the time was, listen, this happened before February and it happened after February. Right. So turns out like what happened before February is not relevant. But the allegation of continuing included both before and after. So now they can't rely on before. But why are they precluded from relying on the after? So accepting that it includes continuing, there is no specific reference in the complaint to there's no specific reference in the complaint to any action that occurred after the February 27th except the termination. And if you're looking at the types of breach of contract, the specific allegations, the ways that we allegedly breached the contract, the May termination is not included in there. And I understand that's a semantic and kind of formalist reading of the complaint. I will accept that. And on the motion to dismiss, they respond by pointing specifically to paragraphs 81 and 99, which are the May discussions. But they never say, Your Honor, that the May discussions, that a portion of their claim is outside of those releases. Instead, the argument, the substance of the argument is that those releases were procured by fraud before the district court. Well, OK, but the challenge that you've got, I get that argument. That's your waiver argument. The challenge with that is you had a co-defendant. And Mr. Harris argued that these cut off allegations pre-February. And you argued it cuts them off altogether. Correct. The district court adopted Mr. Harris's argument, not yours, and said it's just pre-February. And it looked to me like Mr. Musselwhite's responding to Mr. Harris's argument and saying, Yeah, yeah, but we've got allegations after February. Oh, and by the way, they were also procured by fraud. I mean, I read the citation on page 9 to the May conduct plus the fraud as making both arguments. Tell me why I should read it. I mean, otherwise, what is the citation to paragraphs 81 to 99? So I think there are two points there. The first is everything before February, yes, I think we're going to argue that's cut off. But we don't think there is anything after February. If you take the citation on page 9 about the May conduct, our argument with respect to that is that it's not included in the breach of contract claim. We're not on notice through the specific instances of breach of contract that that is a violation of the contract that he's alleging. Can I change the course of your argument a bit? Can you tell me why the district judge correctly concluded that the other claims were barred by the franchise agreements release clauses? So Judge Floyd, if I understand your question correctly, we're only talking about the unfair trade practices claim. Because I think the contract claim, we've been discussing that at length. And then the tortious interference claim, which I would concede is related to conduct after the release. So then we're talking instead about the unfair and deceptive claim. And this court has held in cases like Broussard and Bartholomew that an ordinary breach of contract without some sort of external factor is not an unfair trade practice claim. So in the complaint, Mr. Musselwhite has alleged essentially taking paragraphs 98, 99, 100, he's essentially alleged we breached a contract. I don't think there's any sort of argument that we defrauded him or that anything occurred outside of the context of that contract. Instead, he's just got an intentional breach of contract claim. Now, I understand the concern that – and I think his response to that will be, well, you engaged in a pattern to retake my franchise. That was your MO. I don't think there is any specific allegation that when we entered into the release, it was our intention to retake the franchise, one. And two, even if we set out to retake the franchise sometime after the February release, that is an intentional breach of contract. And I think Judge Wilkinson in the Broussard case made very clear the reason that party's contract is to fix their liabilities and that imputing tort liability on a breach of contract, even if it is intentional, is too much. That it undermines the purpose of contract. So I want to return very briefly to the tortious interference claim because I do believe that Mr. Musselwhite has failed to adequately plead the tortious interference claim. The tortious interference claim, again, requires an unjustifiable interference that causes a breach. And I don't believe the Supreme Court of North Carolina had made that abundantly clear until the Intersol case that we filed on our notice of supplemental authorities yesterday. Pardon me. But Mr. Musselwhite has alleged that he validly transferred his interest to his business partner. And I think that alone undermines the plausibility of his tortious interference claim. Even accepting that it does not, I think we validly terminated, excuse me, we would have validly interfered. We had a business justification for interference. Interference is a high standard to plead in North Carolina. It requires a showing that there is no legitimate business justification. So looking at the DLA Piper letter and the series of conditions that my client found in the restaurant, I think my client had a valid basis to say we do not want this person even in a different role associated with us. It's not just managerial deficiencies, but at that point he would have been acting as MidAtlantic's landlord. And MidAtlantic, people terminate leases for less than having an inattentive landlord. And I think that that's exactly the concern here is that MidAtlantic would have had this inattentive landlord. Now, I understand that that requires rejecting paragraph 98, which does list the violations, which Mr. Musselwhite has said are generally without merit. And I want to touch briefly on why that is not entitled to the presumption of truth under Twombly, Iqbal, and this Court's decisions like Nimitz Chevrolet. So in all of those cases, the animating factor is labels and conclusions are not entitled to the presumption of truth. And I think saying that things are generally without merit. So characterizing something as without merit instead of explaining why it is without merit is, in fact, a label, just broadly saying something is untrue. I think characterizing something as generally without merit is even more problematic. So if you go to, I'll use this hypothetical, if someone comes home, if a child comes home with five grades on her report card and four of them are A's and one of them is a D, it is not unfair to say that the child had generally good grades. But it's not true that all of her grades were good. So I think saying that they are generally without merit in paragraph 100 implicitly suggests that the allegations in paragraph 98, that one of them is true. It does not at least exclude them. But the challenge with that here is the district court didn't rely on that argument below. And at least in theory, if we get past collateral estoppel, we can imagine that they could amend their complaint to fix that problem. I don't know whether they could or not, but in theory they could. And so it's hard for me to see why, at least as a prudential matter, this court ought to reach out and resolve that they failed to adequately give the reasons when it would appear that they would, in the district court, be given the opportunity to amend if that was the issue, at least if they asked for the opportunity to amend. Judge Boyd, I am about out of time. I answered Judge Richardson's question. Your Honor, leave to amend, whether or not to grant something with or without prejudice, is a discretionary decision in the district court. And Judge Boyle did not indicate whether or not he had engaged in that discretion. But I think it is fair to imply, and I'm happy to submit a supplemental authority on this point, when you dismiss a complaint, it's presumed to be with prejudice. So we know he dismissed the complaint. But it would be with prejudice if it's collateral estoppel. The question is, would it necessarily be with prejudice and without opportunity to amend if it's on this alternative ground that you're arguing, right? The alternative ground being they didn't sufficiently allege that the reasons given were bogus. I think it would be, because if you look at the development of this complaint, the complaint, as Mr. Harris pointed out in his memorandum below, the complaint is largely a copy of one that has already been submitted elsewhere in a different case. So we have this complaint that has already been drafted once. There are opportunities to bolster the factual allegations beyond sort of the bare bones. And I understand there are 250 allegations in the complaint, but that doesn't necessarily mean they are fulsome allegations. So there's this opportunity to bolster those allegations. The complaint is then amended. We file a motion to dismiss. The complaint is amended. The complaint is not amended to reflect any sort of correction. Often parties will correct deficiencies, pleading deficiencies pointed out in a motion to dismiss. So this would be giving them a third and perhaps a fourth bite of the apple. Totally true, but that's sort of what district courts do, not us, right? They sort of make the decision about whether, like, this is one time too many or not. I mean, it's hard for us to make that decision is all I'm saying. I appreciate that point, Your Honor, but, again, this court can affirm for any basis on the record, and I submit that Judge Boyle properly exercised his discretion by not allowing them leave to amend. Thank you, Mr. Edwards. Mr. Harrison. Your Honor, I'd like to start with the case that was handed up. The case that was handed up or sent in yesterday, that letter regarding tortious interference, it would be our position, with all due respect to counsel, that that case has absolutely nothing to do with the change in the law. You know, at first, you know, we thought there was some elemental change, you know, in the elements that you needed to plead a tortious interference case. That's not the case, and the proposition that defendants argue, well, you know, you have to have a breach. Well, that's not how we read it, I'm sure. This court is fully capable of reading that opinion for yourself, but it would be our opinion that it has nothing to do with why we're here. It doesn't change the law on tortious interference, and the case is just factually the opposite. It's about, you know, some pirate ship recovering property and not the attempt to use, you know, persons on the board of directors to morph into some breach of contract case. The case has just nothing to do with why we're here. Now, going back to the tortious interference case, they've argued that, well, if the releases didn't do away with that claim, then we were justified in interfering because we had legitimate business concerns, you know, about all of the items that Harris had transmitted to DLA Piper. Well, in Mr. Moselwhite's complaint, we specifically alleged that each and every one of the items, not only was some pattern and practice of how they behaved, but they were just simply untrue. You made that as a conclusory general statement, right? Say generally those are untrue. I disagree, Your Honor. We had specific allegations in the complaint, a subparagraph, if I can find it, regarding the practice of the DLA Piper law. Let me ask it a different way. Okay. If you were back in the district court, could you amend your complaint to, with factual specificity, explain why each of the claims made in the DLA Piper letter was untrue? Yes. Very easily. And with all due respect, we listed some of them in the complaint just before this court. But then why does the complaint say that the claims in the DLA Piper letter are generally without merit? Why aren't they wholly without merit if each one of them is untrue? That phrase was used on brief. It's in your complaint. Well. It's not just the brief. It's in your complaint, I believe. Somewhere. Anyway. Yep. Paragraph 100. The items detailed in DLA Piper's letter were generally without merit. That's in paragraph 100 of your complaint. However, and I would agree that that language is there. It was one paragraph out of the 249. Okay. My question is just, if they're generally without merit, I thought you just said that you could amend your complaint to say that each and every one of those statements in the DLA Piper letter was untrue. We could. Okay. My point being that in paragraph, the specific items enumerated in the DLA Piper letter we claim were misrepresentations. And we also used the term that they were generally not true. So we can amend to be more specific to answer Judge Richardson's question. But the fact that they were misrepresentations in and of themselves, we pled that. And in closing, let's see, my time is about up. We would respectfully contend that the complaint may not be perfect, but it's specifically pled. The standard that we're operating up under is whether or not we've pled the elements, you know, of the causes of action sufficiently to suspect this thing, we're staying in the 12B6 motion. So if you take all of the reasonable allegations that we made to be true, you eliminate the argument that the defendants have that we can rely upon, you know, what Mr. Harris said. Because if you take and accept what we say is true, Mr. Musselwhite was an excellent manager. Mr. Musselwhite didn't engage in any of those activities. So if you accept them as true as the law requires, you can't get to a dismissal of the breach of contract case, the tortious interference case, the unfair and deceptive trade practice case, or the ancillary part and parcel breach of the covenant of good faith. We respectfully argue we've sufficiently pled all of those claims. And we have abandoned several. The four that remain all are well pled. And Mr. Musselwhite, our client, didn't litigate in state court against his client. Thank you, sir. I mean, against his defendant. Thank you. I ask the clerk to adjourn court. I think the start time tomorrow is 9. So we'll come down and agree to council.
judges: Henry F. Floyd, Stephanie D. Thacker, Julius N. Richardson